Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Caitlin Baunsgard
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAN 17 2024

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

JORDY SCOTT DEBOER,

Defendant.

2:22-CR-0094-TOR-2
2:23-CR-0041-TOR-1

PLEA AGREEMENT

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Caitlin Baunsgard, Assistant United States Attorney for the Eastern District of Washington, and Defendant, JORDY SCOTT DEBOER ("Defendant"), both individually and by and through Defendant's counsel, David Miller, agree to the following Plea Agreement:

1. <u>Guilty Pleas and Maximum Statutory Penalties</u>:

   a) *Case 2:22-CR-94-TOR*:

   Defendant agrees to plea of guilty to Count 4 of the Superseding Indictment filed on September 8, 2022, charging Defendant with Possession with Intent to Distribute 50 Grams or More of Actual (Pure) Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), a Class A felony. Defendant understands that the following potential penalties apply:

PLEA AGREEMENT - 1

  1. a term of imprisonment of not less than 10 years and up to a life term;

  2. a term of supervised release of not less than 5 years and up to a lifetime;

  3. a fine of up to $10,000,000; and

  4. a $100 special penalty assessment.

 b) *Case 2:23-CR-41-TOR*:

Defendant agrees to plea of guilty to Count 4 of the Indictment filed on April 4, 2023, charging Defendant with Possession with Intent to Distribute 400 Grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(vi), a Class A felony. Defendant understands that the following potential penalties apply:

  1. a term of imprisonment of not less than 10 years and up to a life term;

  2. a term of supervised release of not less than 5 years and up to a lifetime;

  3. a fine of up to $10,000,000; and

  4. a $100 special penalty assessment.

Defendant further understands the Court has the discretion to run the sentences imposed on each count consecutive to one another.

 2. <u>Supervised Release</u>:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

  a. 5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

PLEA AGREEMENT - 2

       b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

       c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.    <u>Denial of Federal Benefits</u>:

Defendant understands that by entering this plea of guilty, Defendant is no longer eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

4.    <u>Potential Immigration Consequences of Guilty Plea</u>:

If Defendant is not a citizen of the United States, Defendant understands the following:

       a.    pleading guilty in this case may have immigration consequences;

       b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

       c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

PLEA AGREEMENT - 3

  d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5. <u>The Court is Not a Party to the Plea Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

  a. sentencing is a matter solely within the discretion of the Court;

  b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

  c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

  d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

  e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart or vary upward or downward under certain circumstances; and

  f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

6. <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

  a. the right to a jury trial;

PLEA AGREEMENT - 4

      b.    the right to see, hear and question the witnesses;

      c.    the right to remain silent at trial;

      d.    the right to testify at trial; and

      e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7.    <u>Elements of the Offense</u>:

    a)    *Case 2:22-CR-94-TOR*:

The United States and Defendant agree that in order to convict Defendant of Possession with Intent to Distribute 50 Grams or More of Actual (Pure) Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), the United States would have to prove beyond a reasonable doubt the following elements:

> *First*, on or about April 15, 2022, in the Eastern District of Washington, Defendant knowingly possessed a mixture or substance containing a detectable amount of methamphetamine;
>
> *Second*, Defendant possessed a mixture or substance containing a detectable amount of methamphetamine with the intent to distribute it to another person; and
>
> *Third*, the mixture or substance Defendant possessed with the intent to distribute to another person contained more than 50 grams of actual (pure) methamphetamine.

PLEA AGREEMENT - 5

   b) *Case 2:23-CR-41-TOR*:

The United States and Defendant agree that in order to convict Defendant of Possession with Intent to Distribute 400 Grams or More of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi), the United States would have to prove beyond a reasonable doubt the following elements:

> *First*, on or about March 30, 2023, in the Eastern District of Washington, Defendant knowingly possessed a mixture or substance containing a detectable amount of fentanyl;
>
> *Second*, Defendant possessed a mixture or substance containing a detectable amount of fentanyl with the intent to distribute it to another person; and
>
> *Third*, the mixture or substance Defendant possessed with the intent to distribute to another person weighed more than 400 grams.

8. <u>Statement of Facts and Stipulation</u>:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea. The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

The Federal Bureau of Investigation ("FBI") Spokane Safe Streets Task Force was conducting an investigation into a drug trafficking organization operating between Mexico and the Eastern District of Washington. The investigation showed Defendant, JORDY SCOTT DEBOER, was a downline customer / distributor for the organization.

PLEA AGREEMENT - 6

*2022 Investigation*

As part of the investigation, on April 15, 2022, FBI physical and electronic surveillance observed an individual who had been identified as a drug runner for a drug trafficking organization arrive at a stash house in the Tri-Cities, Washington area, pick up a bag from that house, and travel to a local hotel in the Tri-Cities area. Once there, surveillance observed the runner meet with several individuals, transfer the same bag to them, and leave the area. Those individuals, later identified as Defendant and co-defendant Brandon BATKE, left in two separate vehicles, driving in tandem toward Spokane, Washington.

Before entering Spokane, a simultaneous traffic stop was conducted on both vehicles by the Spokane County Sheriff's Office at the request of the FBI. Defendant was identified as the driver of one of the vehicles with BATKE identified as the driver of the other vehicle. Federal search warrants were ultimately executed on the vehicles, and in summary, approximately 4 ounces of heroin, over 1 pound of methamphetamine, and several thousand fentanyl-laced pills were located as well as multiple cellular phones. Search of the cell phones showed multiple communications with the source of supply in the Tri-Cities area. Defendant was indicted on this conduct.

The Washington State Patrol ("WSP") Crime Laboratory has tested the seized suspected heroin and fentanyl-laced pills. The WSP Laboratory has determined the seized suspected heroin was heroin and weighed approximately 150.70 grams. The WSP Laboratory confirmed the seized pills contained fentanyl and determined there were approximately 5,113 such pills. The seized methamphetamine was sent to the Drug Enforcement Administration ("DEA") Laboratory for analysis and the Laboratory determined there to be approximately 518.9 grams of actual (pure) methamphetamine.

PLEA AGREEMENT - 7

*2023 Investigation*

Defendant was released to attend in-patient treatment and then transitioned to clean and sober housing in the Spokane, Washington area. Defendant violated the terms of his pre-trial release and was put back into federal custody. Defendant was again released to treatment in December 2022.

The FBI learned from several sources Defendant had re-engaged in drug trafficking activities. For example, on February 27, 2023, the Kalispel Tribal Gaming Agency removed Defendant and his girlfriend, Mariyah PARKER ("PARKER"), from the Northern Quest Casino, for suspicious drug related activity. After they were removed from the facility, hotel/casino staff entered the hotel room rented by PARKER and found drug-related items, to include two small blue pills stuck to a burnt piece of foil, consistent with the illicit use of fentanyl pills.

On March 21, 2023, SPD received a call from the building owner of an apartment complex in Spokane due to suspected drug use in a specific apartment. The FBI interviewed the building owner, who advised the unit complained of was a short-term rental residence of the complex called to complain about fentanyl smoke coming from the apartment, as well as a large volume of people coming to / from the apartment, consistent with dealing drugs out of the unit. The owner advised PARKER rented the apartment and had a contact email address of jordee23544@gmail.com.

Also in March 2023, a Confidential Informant ("CI") advised that prior to agreeing to cooperate with law enforcement, the CI had been involved with drug trafficking activity with Defendant. The CI knew Defendant was out on pre-trial release and had unusual amounts of cash currency with him.

On March 29, 2023, the CI arranged for the purchase of about ½ pound of methamphetamine and 1,000 fentanyl pills from Defendant by way of Defendant's social media account. Defendant ultimately advised he was staying at a local motel in Spokane and instructed the CI to get a hold of him on a different number to complete the arrangements. Later that same day, the CI placed a communication on the number given

PLEA AGREEMENT - 8

to him/her by Defendant to complete the transaction. An individual named "Rabbit" (later identified as co-defendant Matthew Gus Joseph SAILORS) replied to the communication. The CI knew "Rabbit" to be a runner working on behalf of Defendant. SAILORS informed the CI that he would be delivering the drugs to the CI for Defendant. The CI and the CI's vehicle were searched before and after the controlled purchase for contraband, with none located. The CI was provided with pre-recorded U.S. Currency to complete the purchase.

At a time consistent with the anticipated controlled buy, surveillance units observed SAILORS exit the motel, enter a Honda Civic, and travel to the pre-arranged meeting location. When he arrived, SAILORS exited his vehicle, entered the CI's vehicle, and provided the CI with a paper bag. The CI provided him with the pre-recorded U.S. Currency. SAILORS exited the CI's vehicle, returned to his vehicle, and was surveilled retuning to the local motel. The CI met with the FBI and provided approximately 1,000 fentanyl pills and ½ pound of methamphetamine. The suspected methamphetamine was sent to the DEA Laboratory for testing. The DEA Laboratory has confirmed the purchased methamphetamine contained 200.2 grams of actual (pure) methamphetamine. The fentanyl pills were sent to the WSP Laboratory for testing. The WSP Laboratory determined there were approximately 975 pills, weighing approximately 97 grams containing fentanyl.

On March 30, 2023, multiple federal search warrants were served on rooms at the motel as well as the Honda Civic, and a white BMW associated to Defendant and SAILORS. Defendant was encountered at the top of the stairwell of the motel with a firearm next to him as well as a large, heavy duffle bag. Defendant was arrested and approximately $11,390 in U.S. Currency was located on his person as was a firearm holster. SAILORS was contacted in the white BMW and arrested on an outstanding unrelated felony warrant.

During the execution of a search warrant on the white BMW, law enforcement located a black and gray "bb gear" branded backpack on the rear passenger seat. In that

PLEA AGREEMENT - 9

backpack, law enforcement located multiple bags of fentanyl-laced pills, methamphetamine, a Glock pistol with two loaded magazines, a prescription bottle with SAILORS' name on it, and approximately $2,147 in U.S. Currency. The DEA Laboratory has tested the suspected methamphetamine and has determined it contained approximately 120 grams of actual (pure) methamphetamine.

In the trunk of the white BMW, law enforcement located a black Adidas branded backpack that contained approximately 5,000 fentanyl-laced pills, methamphetamine, suboxone strips, and paperwork displaying Defendant's name. Under a laundry basket also in the trunk of the vehicle, law enforcement located 3 pistol magazines each containing .45 caliber ammunition. Also in the trunk, law enforcement located another Adidas branded backpack that contained a prescription pill bottle with SAILOR's name on it. The DEA Laboratory has tested the suspected methamphetamine and determined it contained approximately 26.8 grams of actual (pure) methamphetamine.

The FBI obtained a supplemental federal search warrant for the black Adidas branded bag located next to Defendant at the Motel 6. During the search of that bag, law enforcement located approximately 24 pounds of suspected fentanyl pills, as well as cocaine, and methamphetamine. The DEA Laboratory has tested the suspected methamphetamine and determined there was approximately 295.3 grams of actual (pure) methamphetamine. The WSP Laboratory tested the suspected cocaine and determined it to be approximately 269.86 grams of cocaine. The WSP Laboratory also tested the seized suspected fentanyl pills and estimated there to be a total of 81,282 pills containing fentanyl, to include approximately 5,000 pills that also contained xylazine.

9. **The United States Agrees:**

   a. *Not to File New Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either

PLEA AGREEMENT - 10

charged in the Superseding Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

      b.    *Dismissal of Remaining Counts Under Both Case Numbers*:

At the time of sentencing, the United States agrees to dismiss the remaining counts in both case numbers unless Defendant breaches the Plea Agreement.

   10.   <u>United States Sentencing Guideline Calculations</u>:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

The parties stipulate and agree for this Defendant, due to the ongoing nature of his drug trafficking activity across the two indictments, his guidelines should be calculated as follows:

      a.    *Base Offense Level and Relevant Conduct*:

The United States and Defendant agree to recommend to the Court the Base Offense Level is 36 based on Defendant's relevant conduct as he possessed with the intent to distribute, as well as engaged in jointly undertaken criminal activity where it was reasonable foreseeable to him that more than 30,000 kilograms but less than 90,000 kilograms of converted drug weight[1] would be possessed with the intent to distribute. *See* USSG §2D1.1(a)(5), (c)(2); USSG §1B1.3(a).

      b.    *Specific Offense Characteristics*:

The United States and Defendant agree to recommend a 2-level enhancement as Defendant possessed a dangerous weapon connected to this offense. *See* USSG §2D1.1(b)(1). The United States and Defendant agree to recommend no additional specific offense characteristics apply. *See generally* USSG §2D1.1(b).

---

[1] The parties recommend the Court utilize the Drug Conversation table due to the multiple types of controlled substances. *See* USSG §2D1.1 n. 8(D).

PLEA AGREEMENT - 11

The parties agree Defendant is not eligible for the application of the Safety Valve in this context pursuant to USSG §2D1.1(b)(18), USSG §5C1.2, 18 U.S.C. § 3553(f), or the First Step Act.

    c.    *Role Adjustments*:

The United States and Defendant agree no role adjustments apply. *See* USSG §3B1.1; USSG §3B1.2.

    d.    *Commission of Offense While on Pre-Trial Release*:

The United States and Defendant recommend a 3-level increase to the Base Offense Level is applicable as Defendant committed the offense while on federal pre-trial release in violation of 18 U.S.C. § 3147. *See* USSG §3C1.3.

    e.    *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

PLEA AGREEMENT - 12

f.  *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

g.  *Criminal History*:

The United States and the Defendant have made no agreement and make no representations as to Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigation Report is completed.

11.  Length of Incarceration:

The United States will recommend a term of incarceration no higher than a total term of incarceration of 300 months. Defendant is free to recommend any legal sentence; however, recognizes he cannot be sentenced to less than 120 months, the applicable mandatory minimum.

12.  Supervised Release

The United States and Defendant each agree to recommend 5 years of supervised release for each case. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

PLEA AGREEMENT - 13

      a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

      b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

      c.    Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

13. <u>Criminal Fine</u>:

The United States and Defendant agree to recommend no criminal fine be imposed. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15. <u>Judicial Forfeitures</u>:

As to Case 2:23-CR-41-TOR, Defendant agrees to voluntarily forfeit and relinquish all right, title and interest he has in the following listed assets to the United States:

- $9,744.00 U.S. currency; and,

PLEA AGREEMENT - 14

- a Norinco 1911 .45 caliber pistol, bearing serial number 602574 and loaded magazine, and holster.

Defendant acknowledges that the assets listed above are subject to forfeiture to the United States pursuant to 21 U.S.C. § 853, as property proceeds obtained from or property facilitating the offense Possession with Intent to Distribute 400 Grams or More of a Mixture or Substance Containing Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(vi), to which Defendant is pleading guilty.

Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States and to testify truthfully in any forfeiture proceeding. Defendant agrees to hold all law enforcement agents and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure, abandonment, or forfeiture of any asset covered by this agreement.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the assets. Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets the Defendant is agreeing to forfeit in this Plea Agreement.

16. <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

PLEA AGREEMENT - 15

17. <u>Additional Violations of Law Can Void Agreement</u>:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

18. <u>Waiver of Appeal and Collateral Attack Rights</u>:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes if the Court sentenced Defendant to 300 months of incarceration or less. Should the Court sentence Defendant to more than 300 months of incarceration, Defendant may only appeal the substantive reasonableness of his sentence.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

19. <u>Withdrawal or Vacatur of Defendant's Plea</u>:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    this Plea Agreement shall become null and void;

    b.    the United States may prosecute Defendant on all available charges;

    c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision about how to proceed, including a claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20. <u>Waiver of Fees and Costs</u>:

Defendant agrees to waive all rights Defendant may have under the "Hyde Amendment," Section 617, P.L. 105- 119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including,

PLEA AGREEMENT - 17

without limitation, any charges to be dismissed pursuant to this Plea Agreement or any charges previously dismissed or not brought as a result of this Plea Agreement).

21. <u>Integration Clause</u>:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____    Jan 17, 2024
Caitlin Baunsgard                  Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in

PLEA AGREEMENT - 18

this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____     1-17-2024
JORDY SCOTT DEBOER                              Date
Defendant

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with the Defendant. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in Defendant's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____     January 17, 2024
David Miller        24582                          Date
Attorney for the Defendant

PLEA AGREEMENT - 19